IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
21 MAY -4 PM 12:24
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
     DEPUTY CLERK

| | |
|---|---|
| ALTAMONTE PEDIATRIC ASSOCIATES, P.A., a Florida Corporation,<br><br>Plaintiff,<br><br>v.<br><br>GREENWAY HEALTH, LLC, a Delaware Limited Liability Company,<br><br>Defendant.<br><br>ALTAMONTE PEDIATRIC ASSOCIATES, P.A., a Florida Corporation,<br><br>Movant,<br><br>v.<br><br>EMDS, INC., a Texas Corporation,<br><br>Respondent. | No. 1:21MC0393 RP |

### ALTAMONTE PEDIATRIC ASSOCATES, P.A.'S OPPOSED MOTION TO COMPEL

Altamonte Pediatric Associates, P.A. ("Altamonte") respectfully moves for an order compelling Respondent eMDs, Inc. ("eMDs") to produce documents discussing the price of its products. *See* Fed. R. Civ. P. 45. Altamonte served a non-party subpoena on eMDs commanding the production of these documents. Ex. A. These documents are highly relevant to Altamonte's litigation against a company called Greenway, pending in the Middle District of Florida. *See generally Altamonte Pediatric Assocs., P.A. v. Greenway Health, LLC*, No. 8:20-cv-604 (M.D. Fla.). In particular, Greenway filed two case documents—a motion to exclude one of

Altamonte's expert reports and an opposition to Altamonte's motion for class certification—arguing that Altamonte needs eMDs' customer-specific pricing information to properly calculate damages against Greenway. This information is relevant to the claims and defenses of the parties, narrowly tailored to the needs of the underlying litigation, and presents no confidentiality concerns. For these reasons, Altamonte respectfully asks this Court to grant its motion to compel.

## I. Background

### A. Underlying Litigation

In order to promote widespread use of electronic health records software ("EHR"), the federal government created a program that provides financial incentives to healthcare providers that meaningfully use certain government-certified EHRs (the "MU" program). *See* First Am. Compl. ¶¶ 23-35, *Altamonte* (M.D. Fla. Sept. 18, 2020), ECF 77. As a result of the MU program, many software companies began developing, marketing, and selling government-certified EHR products to healthcare providers. *See id.* Greenway Health, LLC ("Greenway"), the defendant in the Florida litigation, is one such software vendor. eMDs is another.

Altamonte purchased a product from Greenway marketed as "Intergy Meaningful Use Edition" because of Greenway's representations that Intergy Meaningful Use Edition was compliant with the MU program. *Id.* ¶ 6. It was not, and Altamonte ultimately brought a class action against Greenway in the Middle District of Florida to recover the amounts it and all other Intergy customers overpaid for Greenway's defective and non-compliant EHR software. *See id.* ¶¶ 6-14, 88-125. Altamonte's theory of damages is that MU-compliant software is more valuable than less or non-compliant software, and therefore Altamonte (and all other Intergy purchasers) were damaged by paying a premium for Greenway's defective product. *See, e.g., id.* ¶¶ 128, 132.

### B. The Subpoena

To establish the amount of price-premium damages to which it is entitled in the underlying litigation, Altamonte compared the price of Intergy to the price of similar EHR software products that offered fewer MU capabilities than Greenway represented Intergy as having. Expert Report of Robert Bramblett at 28-32, *Altamonte* (M.D. Fla. Feb. 22, 2021), ECF 127-2. The EHR software eMDs sells is one such product. *Id.* Accordingly, on September 15, 2020, Altamonte issued a document subpoena to eMDs for:

> [D]ocuments sufficient to show the prices you charge and have charged for EHR and Practice Management software, including but not limited to Solution Series, Plus, Aprima, Practice Partner, Medisoft, and Lytec, as well as supplemental products and services, from January 2011 to the present.

Ex. A.

eMDs objected to the subpoena. Ex. B. Following some negotiation, Altamonte allowed eMDs to produce a preliminary declaration outlining the list pricing for its products. Ex. C (10/16/20 email). Altamonte made clear that eMDs might still be required to produce underlying transactional data if there was "some significant surprise later in the litigation." *Id.* (10/19/20 email). Altamonte's experts used the list pricing information disclosed by eMDs to create a damages model for the class, and Altamonte anticipates using the information to calculate damages at trial. *See, e.g.*, Pl. Reply in Supp. of Mot. for Class Certification at 10-11, *Altamonte* (M.D. Fla. Apr. 19, 2021) ("Several pieces of market data establish this difference in value, including[] the difference in price between Intergy and software with fewer supported MU measures . . . ."), ECF 179. Greenway has now asserted that Altamonte's comparative analysis *must* include the raw transactional pricing data for every comparison product. Ex. F (Def. Mot. to Exclude) at 15-16 (arguing that Altamonte's expert analysis should be excluded because "Mr. Bramblett used list prices rather than transactional prices"); Ex. G (Def. Opp'n to Class

3

Certification) at 37–38 (arguing predominance not satisfied because "plaintiff['s] expert relied on list price data rather than transactional data to prove common damages").

Altamonte informed eMDs of this development and renewed its request for eMDs' actual transactional data. Ex. C (3/18/21 Letter).[1] On March 24, 2021, the parties met and conferred regarding Altamonte's request that eMDs produce its transactional data. eMDs thereafter notified Altamonte of its continued refusal to produce its transactional data. Ex. D (4/5/21 Letter). At the same time, eMDs asserted that its "commercially sensitive" raw transactional data is irrelevant to the underlying litigation and that Altamonte's request is overbroad. *Id.*; *see also* Ex. B (Responses & Objections of eMDs to Subpoena)

## II.   Legal Standard

Altamonte "is entitled to all information relevant to the subject matter of [its litigation in the Middle District of Florida] unless such information is privileged." *Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812, 820 (5th Cir. 2004) (quotation omitted); *see* Fed. R. Civ. P. 26(b)(1). In the context of a third party subpoena like the one before this Court, information must be produced if it is "relevant to the claim or defense of any party." *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 606-07 (W.D. Tex. 2019) (quotation marks omitted).

When a subpoena seeks relevant information, courts will only quash it for four reasons: "if it (1) fails to allow a reasonable time for compliance; (2) requires a person who is not a party to travel more than 100 miles from where the person resides; (3) requires disclosure of privileged or protected matter; or (4) subjects a person to undue burden." *Wiwa*, 392 F.3d at 817-18 (citing

---

[1] To the extent there is any discrepancy between the subpoena's demand for all documents "from January 2011 to the present" and Altamonte's letter request that eMDs produce relevant documents "between 2010 and the present," the more precise time period in the subpoena controls the otherwise identical demands. *See* Ex. A (Subpoena); Ex. C (3/18/21 Letter).

4

Fed. R. Civ. P. 45(d)(3)(A)). Whether a subpoena subjects a non-party to an undue burden is determined in light of eight factors, including the relevancy of the information and the breadth of the request. *See id.* at 818; *see also Zamora v. GC Servs., LP*, 2017 WL 1861843, at *3 (W.D. Tex. Feb. 17, 2017) (court must review subpoena *duces tecum* for relevancy and facial overbreadth).[2]

### III. Argument

Altamonte's subpoena seeks information that is relevant to defenses Greenway has asserted in the underlying litigation. Furthermore, Altamonte has a substantial need for the requested information and no other way to obtain it. Because the subpoena does not impose an undue burden on eMDs and because any confidentiality issues can be easily managed through a protective order, the Court should grant Altamonte's Motion to Compel.

#### A. The requested information is relevant to the claims and defenses at issue in the underlying litigation.

The underlying litigation involves two types of claims: violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Sta. § 501.201 *et seq.*; and breach of express warranties in violation of Florida's Uniform Commercial Code ("U.C.C."), Fla. Stat. § 672.313.. eMDs' transactional data is relevant to defenses and objections Greenway has asserted as to both types of claims. Accordingly, these documents are relevant within the meaning of Rules 26(b) and 45.

Calculation of damages under either cause of action requires Altamonte to show the difference in value between Intergy as-delivered: i.e., without the ability to comply fully with the

---

[2] This Court is the proper venue for Altamonte's motion because eMDs and its transactional data are located in Austin. *See CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 711 (N.D. Tex. 2017).

MU program, and as-promised.[3] To perform this analysis, Altamonte's expert compared Intergy's price to the list prices of competitive EHR products offering fewer MU capabilities. Expert Report of Robert Bramblett at 28-32, *Altamonte* (M.D. Fla. Feb. 22, 2021), ECF 127-2. eMDs' EHR software is one of these comparator products. *Id.* However, Greenway subsequently argued that list prices are not probative in this context because they do not account for possible discounting. *See, e.g.*, Ex. F (Def. Mot. to Exclude) at 15-16. Instead, Greenway argues any damages analysis must include an examination of the *actual* pricing of competitor products.[4] *See id.*; *see also* Ex. G (Def. Opp'n to Class Certification) at 37–38.

Given Greenway's position that Altamonte will need to obtain eMDs' transactional data to calculate damages in the underlying litigation, there is more than a "possibility" that this information will pertain to Greenway's defenses. *See Camoco*, 333 F.R.D. at 606. Therefore, eMDs must comply with the subpoena.

**B.   Altamonte's subpoena is not overly broad or burdensome.**

The information Altamonte seeks is not overbroad or oppressive. Courts have found that a subpoena is overboard if it seeks "all documents concerning the parties to the underlying action, regardless of whether those documents relate to that action and regardless of date; the requests are not particularized; and the period covered by the requests is unlimited." *MetroPCS*

---

[3] Under FDUTPA, "damages are measured according to the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986 (11th Cir. 2016). Similarly, direct damages under the U.C.C. are the difference "between the value of the goods accepted and the value they would have had if they had been as warranted." Fla. Stat. § 672.714(2).

[4] As stated above, Altamonte disagrees with Greenway on this point. But that is irrelevant to this motion, since information is discoverable as long as it is relevant to "*any* party's claim or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added).

*v. Thomas*, 327 F.R.D. 600, 610 (N.D. Tex. 2018) (alterations adopted). By contrast, Altamonte's request is limited to certain pricing documents within eMDs' exclusive control involving certain products during the ten years since the federal government instituted the MU program. *See* Ex. A (subpoena). This request is narrowly tailored to the relevant aspects of the underlying litigation and, accordingly, it is not overly broad. *Cf. Am. Fed. of Musicians v. Skodam Films, LLC*, 313 F.R.D. 39, 54 (N.D. Tex. 2015) (subpoena was overly broad where it requested unduly large set of documents unconnected to the claims and defenses in the underlying litigation).

**C.     eMDs' confidentiality concerns do not outweigh Altamonte's substantial need for this information.**

Finally, the potentially confidential nature of eMDs' transactional data does not outweigh Altamonte's substantial need for access to this information.[5] There is "[n]o absolute privilege for confidential information or trade secrets." *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 390 (N.D. Tex. 2003). In most cases, a protective order is sufficient to ensure confidential information remains out of the public eye. *See Monitronics Int'l, Inc. v. Skyline Sec. Mgmt., Inc.*, 2017 WL 7520612, at *4 (N.D. Tex. Oct. 30, 2017); *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 802 (S.D. Tex. 2010). Discovery in the underlying litigation has occurred pursuant to a stipulated confidentiality order that protects "trade secrets, competitively sensitive or other confidential business information." Ex. H (Discovery Confidentiality Order). The order protects "information received in confidence from third parties." *Id.* There is no reason why this arrangement cannot protect eMDs' relevant transactional data. *See Ford Motor Co. v. Versata Software, Inc.*, 316 F. Supp. 3d 925, 942-43 (N.D. Tex. 2017) (finding a protective order sufficient to protect confidential information disclosed pursuant to non-party subpoena).

---

[5] Altamonte would not object to eMDs redacting its customers' identities from the raw transactional data.

## IV. Conclusion

For the above reasons, Altamonte respectfully requests the Court grant Altamonte's motion and order eMDs to comply with the subpoena for its raw transactional data.

Dated: May 4, 2021

Respectfully submitted,

By: /s/ Edward M. Grauman

Edward M. Grauman (Texas Bar No. 24081931)
**BATHAEE DUNNE LLP**
7000 North MoPac Expressway, Suite 200
Austin, Texas 78731
Tel.: 512.575.8848
egrauman@bathaeedunne.com

John T. Nicolaou (*pro hac vice* application forthcoming)
Gabriel Panek (*pro hac vice* application forthcoming)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013
Tel.: 212.355.9500
jnicolaou@lchb.com
gpanek@lchb.com

*Counsel for Altamonte Pediatric Associates, P.A.*

**Local Court Rule CV-7(*i*) Certification**

Pursuant to Local Court Rule CV-7(*i*), the undersigned hereby certifies that the parties to this motion first conferred in a good-faith attempt to resolve this matter; however, no agreement could be made because of eMDs' continued refusal to produce responsive documents. eMDs informed Altamonte it opposes all relief sought within this motion.

Dated: May 4, 2021

John T. Nicolaou
Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, New York 10013
jnicolaou@lchb.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2021, I served a copy of Altamonte Pediatric Associates, P.A.'s Opposed Motion to Compel on the following via electronic and certified mail:

Thomas E. Reilly
James A. Washburn
Troutman Pepper Hamilton Sanders LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308-2216
tom.reilly@troutman.com
james.washburn@troutman.com

Dated: May 4, 2021

Gabriel Panek
Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
gpanek@lchb.com